UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CATHERINE ORTIZ, | ) | Case No.: 11-CV-04285-LHK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT; GRANTING |
| MICHAEL J. ASTRUE, Commissioner of the | ) | DEFENDANT'S CROSS-MOTION FOR |
| Social Security Administration, | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Catherine Ortiz ("Ortiz") seeks review of the decision by Michael J. Astrue, the Commissioner of the Social Security Administration, denying her claim for disability benefits. Ortiz moves for summary judgment and/or a remand. ECF No. 14 ("Mot."). The Commissioner opposes the motion and cross-moves for summary judgment. ECF No. 15 ("Opp'n"). Pursuant to Civil Local Rule 7-1(b), the Court finds these motions appropriate for determination without oral argument. Having considered the parties' papers and the administrative record, the Court DENIES Ortiz's motion for summary judgment, and GRANTS the Commissioner's cross-motion for summary judgment.

## I. BACKGROUND

Ortiz is currently a fifty-three year old woman who was born on November 23, 1959, and completed high school with a GED. Administrative Record ("AR") 62, 176, 215. On or around

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

June 17, 2008, while shopping at a Walgreen's drug store, a woman approached Ortiz from behind and twice struck Ortiz in the head with a hammer.  AR 45, 261, 283.  The female assailant "was responding to auditory hallucinations commanding her to kill Ms. Ortiz."  AR 261.  Ortiz alleges that this assault rendered her disabled and unable to work.  AR 180.

### A.  Agency Review

On October 9, 2008, Ortiz filed an application for disability insurance benefits ("DIB") and supplemental security income claiming that, since the June 17, 2008 assault, she has been unable to work due to bad headaches and feelings of nervousness, anxiety, and pain.  AR 116, 180.

The Social Security Administration ("SSA") denied Ortiz's request for both types of benefits on January 15, 2009.  AR 112-113.  After reviewing Ortiz's statements and medical reports, and considering her age, education, training, and work experience, the SSA found that Ortiz's condition was not severe enough to preclude her from working.  AR 116, 122.  Regarding Ortiz's reported nervousness and anxiety, the SSA found that Ortiz is still able to "think, communicate, and act in [her] own interest."  AR 116.  The SSA also found that Ortiz is able to "adjust to ordinary emotional stresses, and to get along with others, as well as to do [her] usual activities and to remember and follow basic instructions."  *Id.*  In regard to Ortiz's reported bad headaches and pain, the SSA found that, despite Ortiz's discomfort, she was "still able to move about and to use [her] arms, hands and legs in a satisfactory manner."  AR 116.  Consequently, the SSA concluded that, although Ortiz "cannot do [her] past work, [her] condition does not preclude [her] from all work activities."  AR 117.

Ortiz requested that her claim be reconsidered and submitted additional medical records in support of her application.  AR 121, 122.  The SSA denied this request as well, concluding that Ortiz "may not be able to perform [her] past work, [but] based on [her] age, education and past work experience, [she] can do other work that is easy to learn and remember."  AR 122-23.

### B.  Administrative Review

Ortiz sought administrative review of the SSA's decision.  At a hearing before Administrative Law Judge ("ALJ") Christopher Skarda on June 1, 2010, Plaintiff appeared with

2

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

counsel and testified about her mental and physical health and how it affects her ability to work. AR 45-111. Medical expert Thomas Singer, M.D., and vocational expert Ronald Morrell also testified, AR 53, 102, as did Plaintiff's fiancé, Arthur Yslava, AR 94.

### 1. Ortiz's Testimony at the June 1, 2010 hearing

At the June 1, 2010 hearing, Ortiz testified about the following debilitating effects that the assault has had on her physical and mental well-being.

Although she never had any psychological problems prior to the assault, AR 74, Ortiz has experienced anxiety, depression, and post-traumatic stress disorder ("PTSD") since the incident, AR 86. She has started to drink because she "didn't want to deal with the issues that I have." AR 69, AR 72. Ortiz has also lost interest in going anywhere public that is likely to be highly populated. AR 75. Instead, Ortiz spends most of her time at home, sleeping. AR 85, 88. She is highly dependent on her fiancé. AR 88. In addition, Ortiz's feelings of anxiety and depression have been exacerbated by the fact that the woman who assaulted her now lives approximately two blocks away from her daughter. AR 86, 87.

In addition, since the assault, Ortiz has been getting severe headaches approximately three to four times a week that are progressively getting worse. AR 68, 73. In an effort to treat these headaches, she takes Ibuprofen; she is not interested in taking prescription medicine. AR 69, 73.

According to Ortiz, the assault has detrimentally affected her ability to work. Prior to the incident, Ortiz worked as a business manager for a medical placement agency from approximately 1997 to 2002. AR 77. At the end of 2002, Ortiz quit her job and then started collecting unemployment benefits. AR 78. From 2002 through 2008, Ortiz worked in a variety of short term and part time jobs, such as doing payroll and bank reconciliation for a plumbing company, AR 79, working as a manager at Wal-Mart, AR 79, and doing day care, AR 66. Since June of 2008, however, Ortiz has not been able to work at all. AR 64. She does not have medical insurance, and is dependent on government assistance, such as food stamps, and financial assistance from her fiancé. AR 64.

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

Although Ortiz has sought counseling and other forms of support to cope with the effects of the assault, she continues to struggle.  Soon after the incident, from July of 2008 through December of 2008, Ortiz went to see a marriage/family/child counselor, Ann Bliss, MFT.  AR 69.  She attended seven counseling sessions with Ms. Bliss, but said that she stopped going because "it was hard for me to go to her because it would just bring back all the memories of that night."  AR 69.  Ortiz then started drinking as a coping mechanism.  AR 90.  However, because Ortiz wanted to deal with her issues, Ortiz participated in a substance abuse treatment program called Changing Echoes.  AR 81, 90.  The program, which lasted for one month and cost $10,000, was paid for by her fiance's union.  AR 81-82.  Her sobriety date is November 27, 2009.  AR 81.

As an alternative to taking prescription medication in order to deal with her headaches, Ortiz started seeing Dr. Menaw, a hypnotherapist.  AR 73.  The hypnotherapy is not working.  AR 73-74.  When asked whether Ortiz had considered trying something different, Ortiz responded by stating, "Well, I don't have any insurance so that's hard."  AR 74.

The ALJ also asked Ortiz several questions regarding her prior methamphetamine use.  Ortiz admitted that she had methamphetamines in her body at the time of the incident, which she described as a "one-time deal," but stated that her drug use had nothing to do with the incident.  AR 70.  The ALJ proceeded to ask Ortiz at least four times whether she was addicted to methamphetamines.  AR 69-73.  Ortiz consistently responded in the negative.  AR 69-73.  She did concede that she had snorted methamphetamines on other occasions, though stated that she had only done so "altogether maybe six times."  AR 71.

When discussing the incident, Ortiz testified as follows:  "I didn't ask for this to happen.  Before this incident I was living my life fine and I was doing well and it happened and here I am.  And I know a lot of people tell me you should get over it and not think about it, but I can't help it.  I can't help the way I feel, okay.  I wish it didn't happen.  I wish it wouldn't ever have happened."  AR 93.

## 2.  The ALJ's Findings

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    On June 24, 2010, the ALJ issued his decision, denying Ortiz's medical-vocational

2  eligibility for Disability Insurance Benefits and Supplemental Security Income.  AR 22.  In finding

3  that Ortiz did not qualify for benefits under the Social Security Act, the ALJ considered testimony

4  from the hearing, as well as medical reports, employment documents, and other attorney-supplied

5  evidence, such as the police report from the June 2008 assault.  AR 33-36.  The ALJ then analyzed

6  Ortiz's claims under the five-step evaluation process for determining disability.  AR 23; *see* 20

7  C.F.R. §§ 404.1520(a), 416.920(a).

8    First, the ALJ found that Ortiz met the insured status requirements of the Social Security

9  Act and had not engaged in substantial gainful activity ("SGA") since June 17, 2008, the alleged

10  onset date.  AR 24; *see* 20 C.F.R. § 404.1571 *et seq.*, and 20 C.F.R. § 416.971 *et seq.*  Second, the

11  ALJ determined that Ortiz was not disqualified from obtaining disability benefits due to a dearth of

12  "severe" impairments, as she presents with PTSD, anxiety, depression, and polysubstance abuse.

13  AR 24.  However, based on all of the evidence in the record, the ALJ determined that Ortiz's

14  headaches were "not medically determinable or [are] non-severe."  AR 25.  Third, the ALJ

15  determined that Ortiz's impairments did not meet or equal any impairment listed in 20 C.F.R., Part

16  404, Subpt. P., App. 1 ("Listed Impairment").  Consequently, she did not categorically qualify as

17  "disabled."

18    When analyzing Ortiz's residual functional capacity, the ALJ found that Ortiz had the

19  physical capacity to perform a full range of work at all exertion levels, but had certain

20  "nonexertional" limitations, including working in low stress jobs and being limited to "simple,

21  routine, and repetitive tasks."  AR 27.  The ALJ discounted Ortiz's complaints of greater mental

22  limitations, finding Ortiz's  allegations and testimony regarding the severity and persistence of her

23  symptoms to be "not entirely credible."  AR 30.

24    The ALJ then determined, at the fourth step, that Ortiz could not perform past relevant

25  work because Ortiz was limited to performing simple and repetitive tasks in low-stress jobs with

26  limited social interaction, while her past relevant work was semiskilled or skilled.  AR 27, 31.

27

28

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

Finally, after considering Ortiz's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Ortiz could perform.  AR 32.  For example, the ALJ found that Ortiz would be able to perform jobs such as hand packers, custodians, and dishwashers.  AR 32.  Consequently, the ALJ determined that Ortiz "has not been under a disability, as defined in the Social Security Act, from June 17, 2008, through the date of the decision."  AR 32.

### C.  The Appeal Council's Denial of Review

Ortiz appealed the ALJ's decision to the Appeals Council.  AR 16.  Ortiz submitted additional evidence to the Appeals Council, including Santa Clara Valley Medical Center treatment records dated July 24, 2010, and Dr. Mehdikhan's medical treatment records dated August 4, 2010.  AR 10, 399-409.  The Appeals Council considered the additional evidence, but determined that it did not provide a basis for changing the ALJ's decision.  AR 7-8.  The Appeals Council denied Ortiz's request for review.  AR 7.

## II.  LEGAL STANDARDS

### A.  Standard for Reviewing the ALJ Decision

The Court has authority to review an ALJ's decision pursuant to 42 U.S.C. § 405(g).  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner.").  "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

A court may only disturb the ALJ's decision if it is unsupported by substantial evidence in the record as a whole or if it is not an application of the proper legal standard.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Vertigan v. Halter*, 260 F.3d 1044, 1049

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   (9th Cir. 2001) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It "means more than a

2   scintilla but less than a preponderance."  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)

3   (citation and internal quotation marks omitted).  If the evidence supports more than one rational

4   interpretation, a court must uphold the ALJ's conclusion.  *Burch*, 400 F.3d at 680-81.  This

5   substantial evidence standard also applies when reviewing an ALJ's credibility determinations.

6   *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

7                   **B.   Standard for Determining Disability**

8           The Social Security Act defines disability as the "inability to engage in any substantial

9   gainful activity by reason of any medically determinable physical or mental impairment which can

10  be expected to result in death or which has lasted or can be expected to last for a continuous period

11  of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must also be so severe

12  that a claimant is unable to do her previous work, and cannot "engage in any other kind of

13  substantial gainful work which exists in the national economy," given her age, education, and work

14  experience.  42 U.S.C. § 423(d)(2)(A).

15          Disability claims are evaluated using a five-step evaluation process.  20 C.F.R. § 404.1520.

16  In step one, the ALJ must determine whether the claimant is presently engaged in substantially

17  gainful activity.  20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ

18  proceeds to step two and determines whether the claimant has a severe impairment or combination

19  of impairments.  20 C.F.R. § 404.1520(c).

20          At step two, if the claimant does not have a severe impairment or combination of

21  impairments, the claimant is not disabled.  Otherwise, the evaluation proceeds to step three.

22          At step three, the ALJ must determine whether the claimant's impairment or combination of

23  impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R.

24  § 404, subpart P, app. 1. 20 C.F.R. § 404.1520(d).  If so, the claimant is disabled.  If not, the ALJ

25  must proceed to step four.

26          At step four, the ALJ must determine the claimant's residual functional capacity ("RFC")

27  despite limitations from the claimant's impairments. 20 C.F.R. § 404.1520(e).  If, given her RFC,

28

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

the claimant can still perform work that the individual has done in the past, the claimant is not disabled.  If the claimant cannot perform her past work, the evaluation proceeds to step five. 20 C.F.R. § 404.1520(f).

At step five, the Commissioner has the burden of demonstrating that the claimant is not disabled.  The Commissioner must show that the claimant can perform some substantial gainful work in the national economy, considering the claimant's age, education, and vocational background.  20 C.F.R. § 404.1520(g)(1).  If not, the claimant is disabled.

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).  "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas*, 278 F.3d at 955.

**III. ANALYSIS**

Ortiz alleges that the ALJ's denial of disability benefits was not supported by substantial evidence.  Specifically, Ortiz contends that the ALJ erred when evaluating Ortiz's RFC by discounting medical opinion and symptom evidence.  According to Ortiz, these errors tainted the ALJ's findings at step five because he used an unsupported RFC for the comparison of limits and job duties.  Mot. at 4.

"'Residual functional capacity' is what the individual can still do despite her limitations." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545 (2000)).  "If the individual can still do the work she did in the past, then the ALJ should determine that she is not disabled." *Id.* (citing 20 C.F.R. §§ 404.1520(e), 404.1561 (2000)).  "If she cannot do the work she did in the past, the ALJ should consider her residual functional capacity, age, education, and past work experience to determine whether she can do other work.  If she can do other work, then she is not disabled." *Id.* (citing 20 C.F.R. §§ 404.1520(f), 404.1594(f)(8) (2000)).

Here, the ALJ found that Ortiz had the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations.  According to the ALJ, Ortiz

**United States District Court**
For the Northern District of California

8

was limited to: (1) simple, routine, and repetitive tasks; (2) low stress jobs involving only occasional decision-making and changes in the work setting; and (3) jobs that require only occasional conversation and interpersonal interactions.  AR 27.  Further, the ALJ noted that Ortiz must avoid jobs of which the essential function is interpersonal communications.  *Id.*  Based on the RFC assessment and the vocational expert's testimony, the ALJ concluded in step five that Ortiz is capable of making a successful adjustment to other work that existed in significant numbers in the national economy, such as a hand packer, custodial work and dishwasher.  AR 32.

For the reasons stated herein, the Court finds that the record as a whole provides substantial evidence to support the ALJ's decision.

### A.  Substantial Evidence Supports the ALJ's Evaluation of Mental Impairment Evidence

Ortiz argues that, when determining her RFC, the ALJ improperly discounted mental impairment medical evidence and failed to fully develop the record.  Mot. at 5.  The Court disagrees.  Substantial evidence supports the ALJ's evaluation of the mental impairment medical evidence.

### 1.  The ALJ Properly Considered the Mental Impairment Evidence in the Record

Ortiz claims that the ALJ improperly discounted the medical opinion of Ortiz's treating psychologist, M. Mehdikhan, Ph.D., who treated Ortiz from January through May of 2010, and opined that if Ortiz were to work, Ortiz would have severe limitations in her mental functioning and ability to perform work.  For example, Dr. Mehdikhan opined that Ortiz would be completely unable to "complete a normal workday and workweek without interruptions from psychologically based symptoms," AR 379, or "interact appropriately with the general public," AR 380.  The ALJ gave Dr. Mehdikhan's opinion "very little weight." AR 29.

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).  The ALJ may disregard the treating physician's opinion if the ALJ sets forth "specific, legitimate reasons" based

9

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). This

can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d

715, 725 (9th Cir. 1998) (citation omitted). The ALJ may discredit treating physicians' opinions

that are "conclusory, brief, and unsupported by the record as a whole, or by objective medical

findings." *Batson*, 359 F.3d at 1195.

Here the ALJ provided a reasoned explanation for discounting Dr. Mehdikhan's opinions.

First, the ALJ noted that Dr. Mehdikhan did not have a "longitudinal history" with Ortiz. AR 29.

Indeed, Dr. Mehdikhan only treated Ortiz for about four months, from January 18, 2010, to May

17, 2010. AR 345, 377. Second, the ALJ noted that it is "not clear from Dr. Mehdikhan's brief

treatment notes that [the doctor] was aware of [Ortiz's] history of substance abuse." AR 29. Dr.

Mehdikhan reported that alcohol or substance abuse had not contributed to any of Ortiz's

functional limitations. AR 381. However, nothing in the record indicates that Dr. Mehdikhan

knew of Ortiz's prior methamphetamine use. *See* AR 345-381. Yet, as Dr. Singer testified,

methamphetamine is a powerful drug, the withdrawal from which may cause serious clinical

depression. AR 61-62. Thus, Dr. Mehdikhan's lack of awareness of Ortiz's prior drug use may

have led Dr. Mehdikhan to improperly exclude the possibility that Ortiz's depression was caused

by substance withdrawal. *See id.*

In addition, the ALJ found Dr. Mehdikhan's opinions, provided in a "check the box"

Mental RFC Questionnaire, to be "conclusory" and based primarily on Ortiz's subjective

complaints rather than objective clinical findings. AR 29. The Ninth Circuit has held that the ALJ

may "permissibly reject[] . . . check-off reports that do not contain any explanation of the bases of

their conclusions." *Molina*, 674 F.3d at 1111-12 (internal quotation marks and citation omitted);

*see also* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to

support an opinion, particularly medical signs and laboratory findings, the more weight we will

give that opinion."). Notably, Dr. Singer also found that Dr. Mehdikhan's "check the box" form

10

**United States District Court**
For the Northern District of California

1 │ was not sufficient to assess Ortiz's condition because it did not include any information related to

2 │ the duration, intensity, or frequency of any of Ortiz's symptoms.  AR 55.

3 │        Finally, the ALJ noted that Dr. Mehdikhan's opinion was not consistent with the record as a

4 │ whole.  AR 29.

5 │        The ALJ provided "specific and legitimate reasons" for discounting the opinions of Ortiz's

6 │ treating psychologist, Dr. Mehdikhan, on the basis of being "conclusory, brief, and unsupported by

7 │ the record as a whole, or by objective medical findings."  *Batson*, 359 F.3d at 1195.  Thus, the ALJ

8 │ considered the mental impairment evidence in the record properly.[1]

9 │                           **2.  The ALJ Fulfilled the Duty to Develop an Adequate Record**

10 │        Ortiz further bases her argument that the ALJ's decision was not supported by substantial

11 │ evidence on a diagnosis of Postconcussive Disorder made by Paula Chaffee, Ph.D., three months

12 │ after the ALJ's decision.  *See* Ex. to Mot. at 1 ("Neuropsychological Screening Evaluation").  "In

13 │ Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to

14 │ ensure that the claimant's interests are considered, even when the claimant is represented by

15 │ counsel."  *Mayes*, 276 F.3d at 459 (citing *Tonapetyan*, 242 F.3d at 1150); *Webb v. Barnhart*, 433

16 │ F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record is triggered by

17 │ ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on

18 │ an expert's conclusion that the evidence is ambiguous.").

19 │        Ortiz argues that the ALJ should have developed the record in order to rule out that Ortiz

20 │ has a "Postconcussive disorder."  Mot. at 6.  However, Ortiz did not provide the ALJ with any

---

21 │

22 │      [1] Moreover, the Court is not persuaded by Ortiz's argument that the ALJ "failed to
understand" the "progression or time-line" of Ortiz's symptoms, and therefore "overreach[ed]

23 │ without full evaluation" when "discounting the treating physician's opinion."  Mot. at 5.  The ALJ
explicitly discussed the two pieces of evidence on which Ortiz relies to show that "her condition

24 │ was not responsive to treatment or worsening."  *Id*.  First, the ALJ noted in his decision that the
assailant's probation and living situation had allegedly contributed to Ortiz's anxiety and

25 │ depression.  *See* AR 29.  Second, the ALJ acknowledged Ortiz's proffered reason for discontinuing
her treatment with Ms. Bliss, i.e., that the treatment "made her condition worse."  *See* AR 28.

26 │ Thus, contrary to Ortiz's contentions, the ALJ properly considered her allegations of her
aggravated medical condition; he just found them unpersuasive.  This does not render the ALJ's

27 │ consideration of the mental impairment evidence improper.

28 │

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

medical evidence indicating that she has this impairment.  *But see* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").  Indeed, Dr. Chaffee's neuropsychological assessment took place on September 29, 2010, more than three months after the ALJ's decision.  *See* Mot. Ex. 1 at 1; AR 32 (the ALJ's decision was issued on June 24, 2010).  Therefore, the ALJ had no duty to further develop the record by independently exploring the possibility of a medical condition that Ortiz did not assert until three months after the ALJ's decision.  *See Mayes*, 276 F.3d at 459 (holding that the ALJ had no duty to develop the record by exploring Plaintiff's condition diagnosed five months after the ALJ's decision).

Moreover, the ALJ did not have a duty to further develop the record.  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id*. at 459-60.  In this case, the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence.  The ALJ considered Ortiz's complete medical record starting from the day of the assault, including the opinions of Ortiz's therapist, Ms. Bliss, and treating psychologist, Dr. Mehdikhan.  AR 25-30.  Ms. Bliss noted that Ortiz presented as depressed and had symptoms of PTSD.  AR 28.  Dr. Mehdikhan opined that Ortiz suffered from PTSD, depression, anxiety and borderline cognitive dysfunction.  AR 377.  Finally, the ALJ consulted the medical expert, Dr. Singer, at the hearing.  AR 53.  While Dr. Singer agreed with Dr. Mehdikhan's diagnosis of a generalized anxiety disorder and depression, he testified that there was no basis for finding that Ortiz had a cognitive disorder.  AR 57, 58.  The ALJ was entitled to give more weight to Dr. Singer's opinion than to that of Dr. Mehdikhan in light of the conclusory and limited nature of the "check the box" Mental RFC Questionnaire in which Dr. Mehdikhan opined that Ortiz may have borderline cognitive dysfunction.  *See Molina*, 674 F.3d at 1111.  Given Dr. Singer's testimony, the evidence in the record was not ambiguous or so inadequate as to preclude proper evaluation of the evidence.

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    Accordingly, the Court finds that the ALJ fulfilled his duty to develop an adequate record

2    with respect to Ortiz's mental impairments and to reach findings that were supported by substantial

3    evidence.

4            **B. The ALJ's Assessment of Plaintiff's Credibility is Supported by Substantial Evidence**

5        Ortiz argues that the ALJ improperly discredited her statements regarding the "intensity,

6    persistence" and "functionally limiting effects" of her symptoms. *See* Mot. at 7. "In assessing the

7    credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the

8    ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112. "First, the ALJ must determine

9    whether there is objective medical evidence of an underlying impairment which could reasonably

10    be expected to produce the pain or other symptoms alleged." *Id.* "If the claimant has presented

11    such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and

12    convincing reasons in order to reject the claimant's testimony about the severity of the symptoms."

13    *Id.* (internal quotation marks and citation omitted). However, "the ALJ is not 'required to believe

14    every allegation of disabling pain, or else disability benefits would be available for the asking, a

15    result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603

16    (9th Cir. 1989)).

17        When weighing the credibility of an individual seeking disability benefits, the ALJ may

18    consider the following factors: "claimant's reputation for truthfulness, inconsistencies either in

19    claimant's testimony or between [her] testimony and [her] conduct, claimant's daily activities,

20    [her] work record, and testimony from physicians and third parties concerning the nature, severity,

21    and effect of the symptoms of which claimant complains." *Thomas*, 278 F.3d at 958-959 (internal

22    quotation marks and citation omitted).

23        Here, the ALJ found Ortiz's allegations and testimony regarding her symptoms "not

24    entirely credible," in light of: (1) Ortiz's "subjective complaints;" (2) "the absence of medically

25    determinable impairments which can reasonably be expected to produce her symptoms;" (3) "the

26    absence of clinical signs and laboratory findings in the case record that would support the

27    complainant's subjective complaints;" (4) "the absence of longitudinal records showing regular

28

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

contact with physicians;" (5) Ortiz's "receipt of only routine and conservative treatment without reasonable or credible explanation despite complaints of disabling symptoms;" (6) Ortiz's "lack of attempts to obtain relief from pain and other symptoms by participating in treatment and showing up for appointments;" (7) "the lack of consistency of [Ortiz's] subjective complaints throughout the medical record;" (8) "the observations of administration personnel who noted that [Ortiz] had no difficulty concentrating, talking, or understanding at the time her disability application was taken." In addition, the ALJ stated that he "carefully observed [Ortiz] at the hearing, and found that she demonstrated sufficient ability to concentrate, focus, answer questions, and interrelate to cast doubt upon the credibility of her testimony." AR 30.

Ortiz alleges that the ALJ's credibility assessment was not supported by substantial evidence because: (1) the ALJ failed to consider Ortiz's proffered reasons for receiving only limited medical treatments; *see* Mot. at 8; (2) the ALJ improperly considered Plaintiff's drug use as a credibility factor, *see id.*; and (3) the ALJ's findings were "improperly beset" by the erroneous assumption that no medically determinable impairments existed in the record that could have caused Plaintiff's symptoms, *see* Mot. at 7-8. The Court addresses each of these in turn.

### 1. Ortiz's Testimony and Actions Regarding Medical Treatment

At the outset, the Court recognizes that at least three of the eight justifications explicitly provided by the ALJ for finding that Ortiz lacked credibility relate to the limited treatment Ortiz sought to alleviate her symptoms. *See* AR 30. Ortiz contends, however, that she "told SSA that she had two problems: (1) treatment had not helped or aggravated her condition; and (2) getting other treatments was delayed by lack of medical benefits coverage." Mot. at 8 (citing AR 244). The ALJ did not find Ortiz's first explanation to be persuasive. Nowhere in the opinion does the ALJ mention the second reason, Ortiz's lack of medical coverage.

As the Ninth Circuit noted in *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), "[i]n some circumstances, a failure to seek treatment or a failure to follow a prescribed treatment is properly used as evidence supporting a conclusion that the claimant is not credible in describing his or her symptoms. The most common such circumstance is a claimant's complaint about disabling pain

14

that cannot be objectively ascertained." *Id.* at 638; *see also id.* ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). However, "disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Id.* (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (finding social security plaintiff's lack of insurance "a good reason" for not taking medication for her symptoms). "Adjudicators may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment including *inability to pay* . . . ." *Orn*, 495 F.3d at 638 (internal quotation marks and citation omitted) (emphasis added).

If the ALJ concluded that Ortiz was not credible because she did not pursue medical treatments for which she could not pay, there would be clear error. However, the ALJ's evaluation appears focused more on the limited assistance Ortiz sought from the medical providers she was able to access, which is a permissible basis for making an adverse credibility determination. Specifically, the ALJ was troubled by the fact that Ms. Bliss described Ortiz as an "inconsistent client," and that, "[d]espite reporting that she felt 'better' following a therapy session, the claimant cancelled sessions and was sometimes a 'no show.'" AR 28. In addition, Ortiz would not return phone calls inquiring about her well-being. AR 318. Ortiz does not claim that her inconsistent treatment with Ms. Bliss was attributable to a lack of medical insurance. Rather, Ortiz claims that she "discontinued therapy because it made her condition worse." AR 28. The ALJ did not find this explanation believable. Instead, the ALJ found that Ortiz's "failure to attend sessions and follow-up with treatment indicates that the claimant's symptoms must have not been as bad as she alleged." AR 28. As the Ninth Circuit noted in *Fair v. Bowen*, "[w]hile there are any number of good reasons for [failing to seek treatment or not following a prescribed course of treatment] . . . a claimant's failure to assert one, *or a finding by the ALJ that the proffered reason is not believable*,

15

can cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603 (emphasis added).

Moreover, the ALJ placed great emphasis on the fact that Ortiz is not taking any medication to alleviate her symptoms as another reason for doubting the severity of Ortiz's complaints. Specifically, the ALJ found it "hard to believe that [Ortiz] would not have sought at least a low dose of anti-anxiety medications if her symptoms were as bad as she reported." AR 28; *see also* AR 30 ("The claimant testified that she continues to suffer mental symptoms. Yet, the claimant reported that she has never taken and continues to take no psychiatric medications."). In addition, the ALJ noted that, although Ortiz "reported more consistent and significant symptoms [to Dr. Mehdikhan] than those reported previously . . . there is no indication that Dr. Mehdikhan recommended that the claimant see a psychiatrist or start psychiatric medication, despite her many symptoms." AR 29. The ALJ continued, "[a]s confirmed by the claimant at the hearing, the claimant is not taking any medications for her condition." AR 29; *cf.* AR 73 (stating, during the hearing, that the primary reason Ortiz had not gone to the doctor to get prescriptions to help her headaches was "because I don't want to be on medication. I don't want to take pills."); *but see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ's negative credibility inference based on Ortiz's interactions with her health care providers is not clearly improper.

### 2. Ortiz's Testimony Regarding Substance Abuse

The ALJ also premised his adverse credibility determination, in part, due to the inconsistencies in the record regarding Ortiz's prior drug use. Ortiz argues that her successful sobriety through a spiritual rehabilitation course should have enhanced her credibility and should not have been a basis for a negative inference. Mot. at 8. Ortiz misreads the ALJ's analysis. The ALJ did not question Ortiz's credibility simply because she had been a methamphetamine user. Rather, the ALJ questioned Ortiz's credibility because Plaintiff's admission of methamphetamine use was inconsistent. AR 29 ("While the undersigned does not find drug use to be material in

16

[Ortiz's] case, the undersigned considers it a credibility factor to be evaluated in accordance with SSR 96-7p"). "In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and *inconsistencies in claimant's testimony*." *Burch*, 400 F.3d at 680 (emphasis added). Here, Ortiz testified that she was never addicted to methamphetamines and that she had taken methamphetamines "altogether maybe six times." AR 69, 71. Ortiz admitted having methamphetamine in her system when she was assaulted, and explained that it was merely incidental to the assault. AR at 70. However, Ortiz's emergency room report stated that she had a "[h]istory of drug use: methamphetamines," and that "[s]he used meth regularly, about twice a week." AR 272-273. Ortiz's fiancé also testified that Ortiz had used methamphetamines once or twice a month with him, which the ALJ noted as significant. AR 29, 98. Thus, Ortiz's testimony about her drug use is inconsistent with the rest of the record. It was proper for the ALJ to give weight to these inconsistencies in assessing Ortiz's credibility. *See Burch*, 400 F.3d at 680.

### 3. The Absence of Medically Determinable Impairments

Ortiz further argues that the ALJ erred by basing part of his adverse credibility finding on "the absence of medically determinable impairments which can reasonably be expected to produce her symptoms." *See* Mot. at 7-8 (referring to the ALJ's findings at AR 30). The Court finds the ALJ's reliance on this reason as a basis for discounting Ortiz's credibility to be perplexing in light of the fact that, at step three, the ALJ found that Ortiz has PTSD, anxiety, depression, polysubstance abuse, which the ALJ deemed "severe impairments." Moreover, the rest of the ALJ's analysis of Ortiz's RFC appears to assume the presence of these severe impairments. *See, e.g.*, AR 28 (noting in the context of his RFC analysis that Ms. Bliss found that Ortiz "presented as depressed and had symptoms of PTSD" and that consultative psychologist, J. Marinos Ph.D., "diagnosed post-traumatic stress disorder and methamphetamine abuse"). Further, Dr. Singer and Dr. Marinos agreed that Ortiz's symptoms were consistent with one or more of these impairments. *See* AR 53, 58. Consequently, the Court does not find that "the absence of medically determinable

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

1    impairments which can reasonably be expected to produce her symptoms" to be a proper basis for

2    discounting Ortiz's credibility.

3         However, even if the ALJ erred in relying, in part, on "the absence of medically

4    determinable impairments which can reasonably be expected to produce her symptoms" to find

5    Ortiz's testimony and allegations regarding her symptoms "not entirely credible," the Court finds

6    that any such errors were harmless.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.2008)

7    (holding that harmless error "exists when it is clear from the record that the ALJ's error was

8    inconsequential to the ultimate nondisability determination.") (internal quotation marks omitted).

9         As noted previously, the ALJ found Ortiz "not entirely credible" due to Ortiz's inconsistent

10   statements regarding her prior drug use, irregular attendance at counseling sessions, and

11   unwillingness or disinterest in taking medication to treat her symptoms.  The ALJ also expressed

12   concern about "the absence of clinical signs and laboratory findings in the case record that would

13   support the claimant's subjective complaints."  AR 30.  For example, the ALJ noted that "there is

14   no record of complaints to any physician of physical or mental symptoms."  AR 28.  In addition,

15   the ALJ found that Ortiz's symptoms were not as severe as she indicated due to "the lack of

16   consistency of [Ortiz's] subjective complaints throughout the medical record," and careful

17   observations made of Ortiz during the hearing, which supported the ALJ's finding that Ortiz

18   "demonstrated sufficient ability to concentrate, focus, answer questions, and interrelate to cast

19   doubt upon the credibility of her testimony."  AR 30.  While an "ALJ's observations of a

20   claimant's functioning may not form the sole basis for discrediting a person's testimony . . . [they]

21   may be used in the overall evaluation of the credibility of the individual's statements."  *Orn*, 495

22   F.3d at 639 (internal quotation marks and citations omitted).

23        Overall, the Court finds the ALJ's adverse credibility determination to be supported by

24   specific, clear, and convincing reasons.  In addition, the ALJ's findings regarding Ortiz's RFC

25   appear to be supported by the record as a whole.  "Where . . . the ALJ has made specific findings

26   justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by

27

28

United States District Court
For the Northern District of California

18

substantial evidence in the record, our role is not to second-guess that decision." *Fair*, 885 F.2d at 604 (citing *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988)).

### C. Plaintiff Fails to Demonstrate Materiality and Good Cause for Remand Based on New Evidence

Finally, Ortiz argues that the Court should remand this case based on new evidence, specifically, the new neuropsychological report prepared by Dr. Chaffee. Ortiz argues that Dr. Chaffee's report is "the first and only" neuropsychological assessment ever performed. Mot. at 6. Using "standardized calibrated test results," Dr. Chaffee's report allegedly established a new medical condition "Postconcussive Disorder," and demonstrated "long-lasting, and work-precluding, effects from the incident." *Id.*

To justify a remand based on new evidence, Ortiz must show that Dr. Chaffee's report is material to determining her disability, and that she had good cause for failing to produce the evidence earlier. *See* 42 U.S.C. § 405(g) (2010). To be material under section 405(g), the new evidence must bear "directly and substantially on the matter in dispute." *Mayes*, 276 F.3d at 462. Ortiz must additionally demonstrate that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing. *Id.* (citing *Booz v. Sec'y of Health & Human Services*, 734 F.2d 1378, 1380-81 (9th Cir. 1984)).

Here, Ortiz fails to demonstrate a "reasonable possibility" that Dr. Chaffee's report would have changed the outcome of the hearing. First, Dr. Chaffee's opinion would have carried limited weight, because Dr. Chaffee merely saw Ortiz once and admitted that she had "no medical records available for review." Mot. Ex. 1 at 2, 7; *cf.* 20 C.F.R. § 416.927 ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Further, Dr. Chaffee's assessment of Ortiz's work-related abilities does not necessarily contradict that of the ALJ's. For example, Dr. Chaffee noted that "Plaintiff is cognitively able to engage in simple and repetitive work that does not rely on spatial relationships (like assembly)." Mot. Ex. 1 at 9. This is consistent with the ALJ's finding that Ortiz "is limited to simple, routine, and repetitive tasks." AR 27. Dr. Chaffee also determined that Ortiz had demonstrated "Marked"

19

United States District Court
For the Northern District of California

1    level of impairments in "adapt[ing] to changes in job routine," "withstand[ing] the stress of a

2    routine work day," and "interact[ing] appropriately with coworkers and the public."  Mot. Ex. 1 at

3    9-10.  The ALJ likewise noted that Ortiz should be limited to low stress jobs involving only

4    occasional changes in the work setting, and to jobs that "require only occasional conversation and

5    interpersonal interactions."  AR 27.  Thus, notwithstanding Dr. Chaffee's new diagnosis of

6    Postconcussive Disorder, *see* Mot. Ex. 1 at 6, the Court is not convinced that "a reasonable

7    possibility" exists that the new report would have changed the outcome of the administrative

8    hearing.  *See Mayes*, 276 F.3d at 462.  Accordingly, the Court finds that Ortiz fails to demonstrate

9    the materiality of Dr. Chaffee's report.  *See* 42 U.S.C. § 405(g) (2010).

10         Moreover, "[a] claimant does not meet the good cause requirement by merely obtaining a

11   more favorable report once his or her claim has been denied.  To demonstrate good cause, the

12   claimant must demonstrate that the new evidence was unavailable earlier."  *Mayes*, 276 F.3d at

13   463.  Here, even assuming that Dr. Chaffee's report was material to determining Ortiz's disability,

14   Ortiz plainly fails to explain why the new evidence was unavailable during prior proceedings.

15   Ortiz seems to argue that the need for a neuropsychological assessment was "not obvious" until Dr.

16   Singer pointed out the deficiency of Dr. Mehdikhan's opinion at the hearing.  Mot. at 6.  Ortiz

17   further argues that the agency's "limited in scope" psychological evaluation, which reported only

18   PTSD and polysubstance abuse, but not depression or anxiety, demonstrated the "obvious need"

19   for "better mental RFC evidence."  *Id.*; Reply at 3.  However, Ortiz was well aware of both the

20   agency's evaluation and Dr. Singer's opinion testimony since June 1, 2010, the day of the

21   administrative hearing.  AR 45, 285.  Ortiz had ample opportunity to prepare and submit the

22   neuropsychological assessment report before the Appeals Council denied review on September 27,

23   2010.  *See* AR 7, 19.  But Plaintiff chose to wait until September 29, 2010, two days after the

24   Appeals Council denied review, to participate in the neuropsychological assessment.  *See* Mot. Ex.

25   1 at 1.  Plaintiff fails to demonstrate that the neuropsychological assessment is anything more than

26   an attempt to "obtain[] a more favorable report once…her claim has been denied."  *Mayes*, 276

27   F.3d at 463.  Thus, Ortiz fails to show good cause for her failure to incorporate the new evidence

28

20

into the record in a prior proceeding.  *See id.*  Having failed to demonstrate materiality and good

cause, Ortiz is therefore not entitled to a remand based on the newly submitted evidence.  *See* 42

U.S.C. § 405(g).

## IV.    CONCLUSION

The Court finds that substantial evidence supports the ALJ's assessment of Ortiz's residual

functional capacity to perform a full range of work at all exertion levels but with nonexertional

limitations, and that significant jobs exist in the national economy that Ortiz can perform.

Accordingly, Plaintiff's Motion for Summary Judgment is DENIED.  Defendant's Cross-Motion

for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**


Dated:  March 19, 2013                                        _____

                                                             LUCY H. KOH
                                                             United States District Judge

Case No.: 11-CV-04285-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT